## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| IUE-CWA PENSION FUND, et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 05-5954 (KSH) |
| JOSEPH PICCIRILLI, | |
| Defendant. | **OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

### I.      INTRODUCTION

In this diversity case, plaintiffs claim that defendant breached a settlement agreement by failing to make certain payments required under the agreement.  Defendant failed to timely file an answer to the complaint and, at plaintiffs' request, the Clerk entered a default against him. Before the Court is plaintiffs' motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure, which is **granted** for the reasons expressed below.

### II.      GOVERNING LAW

In diversity cases, "the Court "must apply the substantive law as decided by the highest court of the state whose law governs the action." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 304 n.6 (3d Cir. 1995) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

It is well settled that a settlement agreement is a contract and that contracts must be interpreted according to local law. Wilcher v. City of Wilmington, 139 F.3d 366, 372 (3d Cir. 1998). Paragraph 12 of the settlement agreement at the center of this controversy contains a choice of law

provision selecting New Jersey law as the governing law and neither party disputes the validity of this provision. Therefore, the Court will apply New Jersey contract law in resolving this dispute.

## III.    BACKGROUND

Plaintiff IUE-CWA Pension Fund (the "Fund") is a Taft-Hartley trust fund managed by trustees ("Trustees," referred to collectively with the Fund as "Plaintiffs") who represent labor unions and employers that contribute to the Fund. Defendant, Joseph Piccirilli ("Piccirilli"), is the President and Secretary-Treasurer of Pittsburgh Brewing Company ("PBC"), a contributing employer to the Fund. Piccirilli purchased PBC out of bankruptcy with a group of investors in 1995.

The Fund has sued PBC in this Court three times in the past six years over delinquent contributions to the Fund. None of these lawsuits named Piccirilli individually as a defendant. The first suit, captioned IUE-CWA Pension Fund, et al. v. Pittsburgh Brewing Company, Civil Action No. 01-3611 (Cavanaugh, J.) ("PBC I"), was filed on July 31, 2001 and was dismissed on October 11, 2001 based on a settlement reached by the parties. In the second suit by the Fund against PBC for delinquent contributions, IUE-CWA Pension Fund, et al. v. Pittsburgh Brewing Company, Civil Action No. 02-4297 (Greenaway, J.) ("PBC II"), the Fund obtained a default judgment in its favor, but ultimately settled with the company after it had difficulty collecting on the judgment.

The Fund filed suit against PBC for a third time on November 3, 2004. IUE-CWA Pension Fund, et al. v. Pittsburgh Brewing Company, Civil Action No. 04-5429 (Walls, J.) ("PBC III"). However, rather than settling PBC III with an agreement between only the Fund and PBC, as the parties had done in PBC I and PBC II, Piccirilli was individually made a party to the PBC III settlement agreement. It is this PBC III settlement agreement, entered into on July 25, 2005 (the "Settlement Agreement"), that is at the heart of this controversy.

The Settlement Agreement states in relevant part:

THIS SETTLEMENT AGREEMENT (the "Agreement") is entered into by and among the IUE-CWA PENSION FUND and its Trustees (collectively the "Fund"), PITTSBURGH BREWING COMPANY (the "Company") *and JOSEPH PICCIRILLI*, President of Pittsburgh Brewing Company ("Piccirilli") (collectively the "Parties").

. . . .

2. <u>Liquidated Damages, Costs, and Attorney's Fees</u>.  The Company and Piccirilli acknowledge that the Fund would be entitled to collect from the Company liquidated damages, calculated as twenty percent (20%) of the total delinquency ("Liquidated Damages"), as well as costs and attorneys' fees attributable to the Delinquent Contributions.  The Parties agree that in consideration of the covenants and conditions set forth in this Agreement, the Fund will waive payment of the Liquidated Damages and the attorney's fees and costs attributable to the Delinquent Contributions, *provided that the Company and Piccirilli do not breach any provision of this agreement*.

. . . .

4. <u>Installment Payments</u>.  *The Company and Piccirilli agree to pay the Fund a total of $244,469.26, plus interest* that continues to accrue on the Delinquent Contributions (the "Settlement Amount"), in ten (10) monthly installments ("Installment Payments").  *Piccirilli agrees that he shall personally guarantee payment of the Settlement Amount.*  The first nine (9) installment payments shall be in the amount of $27,163.25, commencing on July 25, 2005, with the ninth Installment Payment to be received by the Fund on or before March 25, 2006. . . .

. . . .

6. <u>Consent Judgment</u>.  Contemporaneously with the execution of this Agreement, the Parties shall execute the Consent Judgment attached hereto . . . .  The Consent Judgment shall be held in escrow by counsel for the Fund.  *In the event either the Company or Piccirilli fails to pay timely* any installment payment pursuant to this Agreement (an "Event of Default") within ten (10) business days of receipt by the Company of a written notice of such failure from the Fund, the Fund *shall accelerate all remaining Installment Payments* under this Agreement and shall submit the executed Consent Judgment to the United States District Court for the District of New Jersey . . . .

7. <u>Default in Payment</u>.  *Upon the occurrence of an Event of Default, the Company and Piccirilli shall be subject to payment of interest* at the rate of 1% per month on all outstanding Delinquent Contributions due to the Fund from the date of an Event of Default to the date when payments of all outstanding Delinquent Contributions are made, *together with Liquidated Damages and all costs and expenses of collection incurred by the Fund, including legal fees and expenses attributable to the Delinquent Contributions*.

. . . .

14. <u>Knowing and Voluntary</u>.  The Parties acknowledge that they have consulted with counsel regarding this Agreement and that they knowingly and voluntarily agree to the terms of this Agreement.

(Settlement Agreement, Affidavit of Meghan E. Changelo, Ex. A (docket entry # 11.3)) (emphases added).

PBC made a payment of $27,163.25 on July 25, 2005, but neither PBC nor Piccirilli has made any payments since that date.  Pursuant to paragraph 6 of the Settlement Agreement, which allowed for a consent judgment to be filed if either PBC or Piccirilli defaulted on the agreement, the Fund submitted the previously signed consent judgment for PBC III and Judge Walls filed the consent judgment against PBC on October 26, 2005.  However, the Fund was not able to obtain a lien on PBC's accounts before PBC filed a voluntary petition for bankruptcy under Chapter 11 in the United States District Court for the Western District of Pennsylvania (the "Bankruptcy Court") on December 7, 2005.  The Fund commenced this action against Piccirilli on December 22, 2005.  Piccirilli was personally served with the summons and complaint on January 9, 2006.  On January 23, 2006 Piccirilli filed a notice of removal to the Bankruptcy Court.  The case was remanded back to this Court in an order dated May 8, 2006.

Magistrate Judge Patty Shwartz held a conference call on June 2, 2006 with the parties.  That same day, she filed an order directing Piccirilli to have counsel enter an appearance on his behalf, or advise the Clerk's office in writing that he was proceeding without counsel, no later than June 30, 2006.  The June 2, 2006 order also directed Piccirilli to file an answer to the complaint no later than July 21, 2006.  Piccirilli failed to comply with both of these directives and, as a result, plaintiffs filed the present motion for default judgment on August 9, 2006.  Plaintiffs subsequently filed a request for a Clerk's entry of default on September 13, 2006.  The Clerk entered default against defendant on September 14, 2006.

Piccirilli, through counsel, submitted an identical set of materials in opposition to both

plaintiffs' motion for default judgment and plaintiffs' request for a Clerk's entry of default.  These opposition papers were filed on August 28, 2006 and September 14, 2006, respectively.  Piccirilli argues that default judgment is inappropriate in this case because he has a meritorious defense, his delay was not the result of culpable misconduct, and plaintiffs will not be prejudiced if default judgment is denied.

## IV.   ANALYSIS

The Third Circuit has expressed disfavor on the entry of default judgment and prefers instead for cases "be decided on their merits."  United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984).  Ultimately, however, entry of default judgment is a matter of the district court's discretion.  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).  In determining whether default judgment should be granted, a district court must consider three factors: (1) whether the defendant has a meritorious defense; (2) whether the denial of default judgment would cause prejudice to the plaintiff; and (3) whether defendant's delay is due to culpable conduct.  Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).  Because Piccirilli has not established the existence of a meritorious defense, the Court finds that default judgment is appropriate in this case.

## A.  Existence of a Meritorious Defense

"The threshold issue in opening a default judgment is whether a meritorious defense has been asserted."  Hritz, 732 F.2d at 1181.  This is a "stringent standard" which requires the defendant to "set forth with specificity the grounds for his defense."  Harad v. Aetna Casualty & Surety Co., 839 F.2d 979, 982 (3d Cir. 1988).  Once the defendant has done this, the Court looks at the substance of the defense to determine if it is meritorious.  Id.

Piccirilli argues that default judgment is inappropriate because he has a meritorious defense.

While he concedes that he personally guaranteed payment under the Settlement Agreement, Piccirilli claims that his guarantee was conditioned upon plaintiffs first exhausting their remedies against PBC before proceeding against him.  Piccirilli states that paragraph 6 of the Settlement Agreement (providing for the filing of a consent judgment against PBC upon an event of default) is the sole and primary enforcement mechanism under the Settlement Agreement and that he cannot be considered primarily liable because plaintiffs chose not to make him part of the consent judgment.  The Court disagrees.

The New Jersey Supreme Court has instructed:

> Our obligation when interpreting contractual provisions is clear.  First and foremost, "fundamental canons of contract construction require that we examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances."  State Troopers Fraternal Ass'n v. New Jersey, 149 N.J. 38, 47, 692 A.2d 519 (1997) (citations omitted).  As stated in Marchak v. Claridge Commons, Inc., "[w]hen reading a contract, our goal is to discover the intention of the parties.  Generally, we consider the contractual terms, the surrounding circumstances, and the purpose of the contract."  134 N.J. 275, 282, 633 A.2d 531 (1993) (citations omitted).

Highland Lakes Country Club & Community Ass'n v. Franzino, 186 N.J. 99, 115-16 (2006).  Consideration of these factors shows that the Settlement Agreement made Piccirilli and PBC jointly and severally liable for payment of the settlement amount.

First, the contractual terms indicate a clear intention to make both Piccirilli and PBC primarily liable under the Settlement Agreement.  For example, paragraph 4 of the Settlement Agreement states, "The Company *and Piccirilli* agree to pay the Fund a total of $244,469.26, plus interest . . . ."  (emphasis added.)  Paragraph 6 states, "In the event either the Company *or Piccirilli* fails to pay timely  . . . ., the Fund shall accelerate all remaining Installment Payments under this Agreement . . . ."  (emphasis added.)  Paragraph 7 states, "Upon the occurrence of an Event of

Default, the Company ***and Piccirilli*** shall be subject to payment of interest . . . , together with Liquidated Damages and all costs and expenses of collection incurred by the Fund, including legal fees and expenses attributable to the Delinquent Contributions." (emphasis added.) While paragraph 6 does provide for the filing of a consent judgment against PBC in the event of a default, there is no language indicating that this is plaintiff's ***only*** mechanism to obtain relief.  That the consent judgment was not considered to be the sole method of enforcement is underscored by the fact that Piccirilli was not a party to <u>PBC III</u> and, therefore, Piccirilli could not have been a party to a consent judgment in that case.

Second, the surrounding circumstances also show an intent to make Piccirilli and PBC jointly and severally liable for payment of the settlement amount.  <u>PBC III</u> was the third lawsuit between plaintiffs and PBC for delinquent contributions to the Fund.  <u>PBC I</u> and <u>PBC III</u> both ended in settlement agreements, but plaintiffs still had difficulty collecting – resulting in <u>PBC III</u>.  It is entirely unsurprising, based on that history, that Piccirilli was made a party to the <u>PBC III</u> Settlement Agreement and made equally liable with PBC for payment under the Settlement Agreement.

"[T]he plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances," <u>Highland Lakes Country Club</u>, 186 N.J. at 115, show that Piccirilli and PBC are jointly and severally liable for payment under the Settlement Agreement. Because Piccirilli has failed to establish the existence of a meritorious defense, it is unnecessary for the Court to consider the two remaining factors.

**B.  Amount of Judgment**

Upon the event of a default, the Settlement Agreement requires payment of the following: (1) the unpaid amount of delinquent contributions; (2) interest at the rate of 1% per month on all

outstanding Delinquent Contributions; (3) liquidated damages, calculated as 20% of the total delinquency; (4) costs and attorneys' fees attributable to the delinquent contributions.  (Settlement Agreement, ¶ 7.)  Plaintiffs attached a "Statement of Damages" to their moving brief in order to assist the Court in calculating damages.  (docket entry # 11.8.)  Plaintiffs' schedule contains the following amounts:

| | | |
|---|---|---|
| 1. | Unpaid amount of delinquent contributions | $210,406.11 |
| 2. | Interest | $49,859.81 |
| 3. | Liquidated damages | $42,081.22 |
| 4. | Attorneys' fees and expenses | $118,805.70[1] |
| | **TOTAL** | **$421,152.84** |

Piccirilli does not dispute plaintiffs' calculation of the unpaid amount of delinquent contributions, interest, or liquidated damages.  The Court has carefully reviewed these three calculations and finds they are accurate.  Piccirilli's sole point of contention is with the "incredible" amount of attorneys' fees and expenses submitted by plaintiffs.  (Aff. of Joseph R. Piccirilli, Docket Entry # 13, ¶ 21.)

The Settlement Agreement does not limit recovery of attorneys' fees to the cost of enforcing the agreement.  In addition to the costs of enforcing the Settlement Agreement, an event of default under the Settlement Agreement makes Piccirilli and PBC liable for the fees and expenses associated with the PBC III litigation, which would have been waived if neither Piccirilli nor PBC had defaulted

---

[1]  The schedule submitted by plaintiffs reflected a total of $119,159.94 in attorneys' fees and expenses.  In a subsequent submission, plaintiffs noted that an error in one of its law firm's billing systems mistakenly included $354.24 of expenses that should not have been included. For this reason, the Court has reduced the proposed attorneys' fees by $354.24.

-8-

under the Settlement Agreement.  (Settlement Agreement, ¶¶ 2, 7.)  Plaintiffs have submitted

invoices and detailed time sheets for each of the three law firms that worked with them on PBC III

and this action.  Schulte Roth & Zabel served as lead counsel in both actions, while Buchanan

Ingersoll & Rooney served as local counsel in Pennsylvania and Carella, Byrne, Gilfillan, Cecchi,

Stewart & Olstein served as local counsel in New Jersey.  Based on the support provided, the Court

notes that plaintiffs' attorneys' fees and expenses consist of approximately the following:

1.  Attorneys' fees incurred in connection with this action:
    a.  Schulte Roth & Zabel LLP........................................$43,312.50
    b.  Buchanan Ingersoll & Rooney PC.............................$27,454.00
    c.  Carella, Byrne, Gilfillan, Cecchi, Stewart & Olstein.$5,624.50
2.  Attorneys' expenses incurred in connection with this action:
    a.  Schulte Roth & Zabel LLP........................................$0.00
    b.  Buchanan Ingersoll & Rooney PC.............................$124.38
    c.  Carella, Byrne, Gilfillan, Cecchi, Stewart & Olstein.$394.37
3.  Attorneys' fees incurred in connection with PBC III:
    a.  Schulte Roth & Zabel LLP........................................$34,042.50
    b.  Carella, Byrne, Gilfillan, Cecchi, Stewart & Olstein.$6,994.00
4.  Attorneys' expenses incurred in connection with PBC III:
    a.  Schulte Roth & Zabel LLP........................................$0.00
    b.  Carella, Byrne, Gilfillan, Cecchi, Stewart & Olstein.$859.45
**TOTAL................................................................................$118,805.70**

A careful review of these fees and expenses leads the Court to conclude that they are

reasonable.  Plaintiffs have had attorneys working on these two lawsuits since October 2004 – a

period of 22 months to the date of plaintiffs' filing this motion for default judgment.  Monthly

attorneys' fees of approximately $5,400 per month are not unreasonable.  These fees and expenses

include preparing, drafting and filing two complaints, the cost of discovery, attending scheduling

conferences, negotiating and drafting the Settlement Agreement, as well as working to get the

present case remanded to this Court after Piccirilli improperly removed it to the Bankruptcy Court.

Piccirilli's claims that these fees are excessive ignores the fact that the tasks performed on behalf of

plaintiffs all relate to their lawyers' efforts to recover settlement money s that he individually agreed to pay.

## V.    CONCLUSION

For all the foregoing reasons, plaintiffs motion for default judgment is **granted**.   An appropriate order and a judgment in the amount of **$421,152.84** will be entered.   Plaintiffs shall submit a form of judgment within five working days.


Dated: February 9, 2007                          /s/ Katharine S. Hayden
                                          Katharine S. Hayden, U.S.D.J.